IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

LINDA HANEY, individually, as natural )
mother of decedent. )
 )
    Plaintiff, )
 ) Case No. 6:15-cv-03531-JTM
v. )
 )
LESTER ROBERT LANGSFORD, )
 )
    Defendant. )

**PLAINTIFF LINDA HANEY'S RESPONSE AND SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN COUNTS AND PARAGRAPHS OF PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT OF PLEADING**

COMES NOW Plaintiff, Linda Haney, individually as natural mother of the Decedent, Christina Russo, with her response and suggestions in opposition to the motion to dismiss filed by Defendant, Lester Robert Langsford, states as follows:

### I. Introduction

Defendant states that the Complaint appears to assert Counts II through V under the Missouri survival statute, §537.020 RSMo and then argues those counts should be dismissed or amended. Plaintiff asks the Court to deny Defendant's motion to dismiss Counts II through V for the reasons discussed below. Defendant did not move to dismiss the wrongful death claim filed under §537.080 RSMo as Count I, therefore, Count I will not be addressed. Defendant moved to dismiss Count V. However, fails to give any reasons or precedent in support of his motion to dismiss Count V. Plaintiff asks the Court to deny Defendant's motion to dismiss Count V.

## II. Wrongful Death action vs. Survival action

The survival statute and the wrongful death statute are antagonistic toward each other. The survival statute "applies when an injury does not cause death and the wrongful death statute applies when the injury does cause death." *Wollen v. DePaul Health Ctr.,* 828 S.W.2d 681, 685 (Mo.1992); *Andrews v. Neer,* 253 F. 3d 1052, (8th Cir. 2001). Furthermore, Missouri law states, "A wrongful death action is not a transmitted right nor a survival right but is created and vested in the statutorily designated survivors at the moment of death." Finney v. National Healthcare Corp.,193 S.W.3d 393 (Mo.App. 2006). The Missouri Supreme Court provides further guidance:

> Mo.Rev.Stat. § 537.080. The Missouri Supreme Court has declared the wrongful death statute to be the sole source of a cause of action in Missouri where the injuries sustained by the decedent caused the decedent's death. In *Sullivan v. Carlisle,* the court warned that the wrongful death statute "should not be confused with the so-called `survival statutes,' which ensure that pre-existing claims will not abate upon the death of the plaintiff or defendant." 851 S.W.2d 510, 514 & n. 6 (Mo. 1993) (describing section 587.808 as a combined "death and survival" statute). The Missouri Supreme Court has made it plain that in cases such as that of Bobby Andrews, under Missouri law the personal action arising from his injury and death survives to his spouse or children or other descendants. We apply here the Missouri Supreme Court's clear statement of Missouri law.

*Andrews v. Neer,* 253 F.3d 1052, 1058 1061 (8th Cir. 2001).

Defendant requests clarification of whether my causes of action are brought under the wrongful death statute of §537.080 RSMo. or under the survival statute of §537.020 RSMo. The Defendant's motion to dismiss assumes that the personal injuries alleged did not cause the decedent's death. I intended to bring all claims under the wrongful death statute of §537.080 RSMo. or as torts in their own right that relate to or caused the death of my daughter. Defendant correctly states that survival actions are for injuries that did not cause or are not related to a decedent's death. However, all of my causes of action in the Complaint are for injuries that did cause and relate to my daughter's death, therefore, all of my causes of action are brought under either the wrongful death statute of §537.080 RSMo. or as a tort in their own right that relate to or caused the death of my daughter.

Defendant states that §537.030 prohibits survival actions for assault and battery or false

imprisonment. Now that I have clarified that I am not bringing claims under the survival statute at this time, Defendant's citation to §537.030 is irrelevant, because it does not prohibit battery or false imprisonment from being brought under §537.080 RSMo. or as a tort in their own right that relate to or caused the death of my daughter.

I mistakenly included the words "Survival Action" in the title of Count II. In fact, the statute listed and the damages contained in Count II reference §537.090, which describe damages available in a wrongful death action. I intended for Count II to only reference §537.090. While much of Defendant's Suggestions discuss §537.020, it is not a part of my Complaint. Please disregard the words "Survival Action."

If the court orders or advises for me to apply to become personal representative of my daughter's estate to sustain my causes of action against the Defendant then time remains for me to establish myself as such. Statute §473.070.1 RSMo states the following, "Any action to establish an interest in an estate by descent shall be filed prior to the expiration of the applicable objection period for a final settlement pursuant to section 473.590 or for a statement of account pursuant to subsection 4 of section 473.840."

### III. Defendant offers no reasons or precedent to justify moving to dismiss Count V

The Defendant moved to dismiss Count V of the Complaint, which alleges negligence. Defendant failed to state any reasons or precedent to justify his moving to dismiss Count V. The court must deny Defendant's motion to dismiss Count V.

The Complaint presents negligence as an alternative theory by which my daughter died. Despite Defendant's arguments, I did not indicate in my Complaint that I was bringing negligence under the survival statute. If I am unable to prove that Mr. Langsford intentionally caused my daughter's death by injecting her with drugs he knew would cause her overdose, I will prove that Mr. Langsford negligently caused my daughter's death by injecting her with drugs without the intention of killing her

but that he should have known would cause her death. Mr. Langsford is an adult who owed a duty of care to my daughter as her boyfriend and by being the person to administer drugs to her and to care for her while intoxicated. His negligence caused my daughter's death, therefore, negligence cannot be brought under the survival statute but must be brought under the wrongful death statute or as a tort in its own right that relates to or caused the death of my daughter.

## IV. Statute of Limitations tolled by capable of ascertainment rule

Defendant contends that Counts III and IV are time barred by two-year statutes of limitations. Missouri establishes its tolling rule on statutes of limitations with its "capable of ascertainment" rule in the following statutory language:

> Period of limitation prescribed. Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

§516.100 RSMo.

The Missouri Supreme Court conducted an extensive analysis of the capable of ascertainment rule and established an objective test:

> In sum, under the above cases the capable of ascertainment test is an objective one. The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages. At that point, the damages would be sustained and capable of ascertainment as an objective matter.

*Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 584-85 (Mo. banc 2006).

Defendant's motion and suggestions assume I was capable of ascertaining the harm to my daughter on the date of her death. According to the death certificate issued to me and the police report, my daughter died on December 17, 2012. Defedent incorrectly states the date of my daughter's death as December 13, 2012. I discovered that my daughter died on the date of her death, but I was not

objectively capable of ascertaining suspicions that Mr. Langsford intentionally or negligently caused my daughter's death until approximately December 2014. My daughter's death was ruled an accidental drowning and/or overdose by the Greene County Medical Examiners Office in an autopsy dated February 18, 2013. Mr. Langsford communicated with me after my daughter's death, which also prevented me from ascertaining that my daughter died in anyway other than an accidental overdose and/or drowning. The Springfield Police Department also did not file charges against Mr. Langsford.

For approximately two years, I believed my daughter died of an accidental overdose and/or drowning. In December of 2014, I looked at photographs of my deceased daughter and began to grow suspicious of the bruises on her body. I was also alarmed by the fact that the injection site of the drugs appeared to be in my daughter's right arm, her dominant arm. This meant she could not have injected drugs into herself. In light of learning these new facts, I also began to consider conversations I had with Mr. Langsford prior to my daughter's death, in which he stated that he took care of my daughter by administering all injections into her when they used drugs together.

Upon the reasons and precedent stated in this section, Plaintiff asks the Court not to dismiss Counts III and IV on the basis of them being time barred, or any other cause of action with less than a three-year statute of limitations.

### V. Intentional Infliction of Emotional Distress

Defendant insists that the Complaint's count alleging Intentional Infliction of Emotional Distress is actually an allegation for battery. Defendant does this intentionally to try to convert the allegation into battery, which has a two-year statute of limitations. The Defendant holds this preference because his attorneys are aware that Missouri has a general five-year tort statute of limitations set out in §516.120(4), which applies to an action for any "injury to the person or rights of another, not arising on contract and not herein otherwise enumerated." The Complaint's allegation of Intentional Infliction of Emotional Distress falls under this statute of limitations and is not time barred, despite Defendant's best

efforts to convert the allegation into one for battery.

With that stated, I did fail to include battery as a cause of action in addition to Intentional Infliction of Emotional Distress. If given the opportunity to amend the Complaint, I would wish to include battery as Count VI.

### VI.  Motion to Strike

With the exception of paragraph 82, Plaintiff requests the Court deny Defendant's motion to strike any additional paragraphs from the Complaint.

The Eastern District of Missouri has established its disfavor toward granting motions to strike:

> In ruling on a motion to strike pursuant to Rule 12(f), a court must construe the pleadings in the light most favorable to the nonmoving party and even where allegations are redundant or immaterial, they should be stricken "only if prejudicial to the moving party." Giblee v. RJW Transp., Inc., Nos.1:10CV0060SNLJ, 1:10CV0120SNLJ, 2010 WL 4974863, at *2 (E.D. Mo. 2010); see also Morgan v. Midwest Neurosurgeons, LLC, No. 1:11CV37 CEJ, 2011 WL 2731534, at *1 (E.D. Mo. July 12, 2011). In short, motions to strike are disfavored and infrequently granted. Giblee, 2010 WL 4974863, at *2 (citing 2 James W. Moore, et al., Moore's Federal Practice § 12.37[3] (3d ed. 2009)).
>
> *Brown v. Davis,* Dist. Court, No. 4:12CV00649 AGF, E.D. Missouri 2012.

I agree to strike any reference in the Complaint to my status as pending administrator of my daughter's estate. Paragraph 82 of the Complaint mentions this language. I intended to delete all references to an application to become personal representative of my daughter's estate, but I mistakenly failed to delete all references. I agree to strike paragraph 82.  Although not moved by the Defendant, I also agree to delete the words "Survival Action" from the title of Count II.

Paragraphs 62, 63, and 64 relate to syringes found by the Springfield Police Department, which they still maintain as evidence. I intend to have all syringes found at the residence where my daughter died DNA tested for the syringe that I believe Mr. Langsford used to cause the death of my daughter. Based on interviews of several witnesses who were at the home during my daughter's death or during other past instances of Mr. Langsford injecting my daughter with drugs, I believe one of those syringes will have Mr. Langsford's fingerprints on the plunger, traces of fentanyl in the barrel, and my daughter's

DNA on the needle. The syringes are vital to my claims.

Paragraphs 66, 67, 68, and 69 relate to witnesses who either know Mr. Langsford well or witnesses who were present at the home when my daughter died. I chose not to use their full names because many people I have spoken to are afraid of retaliation. I did not use their full names out of respect and concern for them at this stage in the litigation. At the appropriate time, the full names of all witnesses will be disclosed to Defendant. My Complaint does not state the "opinions of unnamed lay persons." Rather, it states the views of people who have firsthand knowledge of what happened to my daughter or of Mr. Langsford's behavior in other settings.

Paragraph 70 is appropriate because it shows a pattern by Mr. Langsford. It is important for a jury to know that two consecutive girlfriends died in Mr. Langsford's care. It speaks to the elements of my claims that relate to Mr. Langsford's methods and drug expertise. Mr. Langsford's drug expertise is relevant because it shows that Mr. Langsford had the knowledge to use an amount of fentanyl that would intentionally cause my daughter's death.

Paragraphs 71, 72, and 73 relate to the importance of establishing why I believe Mr. Langsford purchased the fentanyl that killed my daughter. My daughter did not have a dollar to her name. Mr. Langsford used his substantial inheritance to purchase the drugs that he used to cause my daughter's death. Furthermore, I do not appreciate the Defendant's offensive, unnecessary, and unprofessional commentary regarding my motivations for bringing this lawsuit. My relentless motivation will always be to prove beyond any doubt the truth of what happened to my daughter.

Paragraphs 78 and 79 mistakenly mention the "Estate of Christina Russo." I agree to strike reference to the "Estate of Christina Russo," but I do not agree to strike the entirety of Paragraph 78 and 79.

Paragraph 80 discusses Mr. Langsford's current incarceration for possession of a controlled substance. This fact again is vital to demonstrating Mr. Langsford's expertise and knowledge of drugs. The police report and case against Mr. Langsford establish a number of facts about Mr. Langsford's

expertise and knowledge of drugs.

I agree to strike Paragraph 82.

Defendant makes a vague objection to my demand for prejudgment interest. In fact, I tried to contact Mr. Langsford prior to filing suit through my Illinois attorney who sent emails and a letter to Mr. Langsford's only known attorney at that time: Gary Bishop. We contacted Mr. Bishop because he has previously represented Mr. Langsford in Greene County courts. We never received a response from Mr. Bishop.

Defendant moves to strike my request to recover attorney's fees. Attorney fees can be and often are recovered without statutory authority. The presence of statutory authority is not necessary for a court to award attorney's fees.

## VII.  More definite statement of pleading

I have no objection to Defendant's request for a more definite statement of the Complaint. I agree to submit an amended Complaint, if the Court believes it would be helpful.


Dated: February 9, 2016

                                                          Respectfully Submitted,

                                                          /s/ Linda Haney

Linda Haney, *pro se*
2370 Castilian Circle,
Northbrook, IL  60062
linda@dollypoor.com
Phone: 224-202-1893
Fax: (773) 528-0013

**Prepared with Assistance of Counsel**

## *Certificate of Service*

The undersigned certifies that a true copy of the foregoing was served via e-mail on February 9, 2016 upon:

**DEFENDANT'S ATTORNEYS**
STEPHEN H. SNEAD MO#29623
ANDREW J. DONELAN MO#62850
901 St. Louis Street, Suite 101
Springfield, MO 65806
Phone: 417-886-1683
Fax: 417-319-2768
E-mail: ssnead@batyholm.com
adonelan@batyholm.com

   /s/ Linda Haney
   Linda Haney, *pro se*
   2370 Castilian Circle,
   Northbrook, IL 60062
   linda@dollypoor.com
   Phone: 224-202-1893
   Fax: (773) 528-0013